NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WAYNE SURGICAL CENTER, LLC, individually and on behalf of all those similarly situated, | ) ) ) ) ) |
|  | Hon. Harold A. Ackerman |
| Plaintiffs, | ) ) ) | Civil Action No. 06-928 |
| v. | ) ) ) | **OPINION AND ORDER** |
| CONCENTRA PREFERRED SYSTEMS, INC., | ) ) ) ) |  |
| Defendant. | ) ) |  |

Bruce H. Nagel, Esq.
Robert Solomon, Esq.
NAGEL, RICE & MAZIE
103 Eisenhower Parkway
Roseland, NJ 07068

Thomas A. Gentile, Esq.
Neil L. Prupis, Esq.
LAMPF, LIPKIND, PRUPIS & PETIGROW
80 Main Street
West Orange, NJ 07052
*Attorneys for Plaintiffs*

Dawn J. Groman, Esq.
Michael Kendall, Esq.
Daniel A. Curto, Esq.
Lauren M. Papenhausen, Esq.
McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, NY 10017
*Attorneys for Defendant*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on Defendant's motion to dismiss (Docket No. 8) for failure to state a claim or, in the alternative, to dismiss Plaintiff's state law claims because they are preempted by the Employee Retirement Income and Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), *et seq*. For the following reasons, Defendant's motion to dismiss is GRANTED.

*Background*

Plaintiff Wayne Surgical Center ("WSC") provides ambulatory surgical care to patients who undergo same-day surgical procedures and also provides out-of-network services to subscribers in a number of health insurance plans on a non-contractual basis. Under the terms of the health care plans, these health insurance carriers are obligated to reimburse WSC for services rendered to the insured patients based on usual, customary, and reasonable charges. Defendant Concentra Preferred Systems, Inc. ("CPS") provides health care management services, including the re-pricing of claims submitted to health insurance carriers by medical services providers. After a medical service provider submits its bill to a health insurance carrier, the carrier submits the bill to CPS for a determination of the usual, customary, and reasonable charges of the services rendered by the medical service provider. The health insurance carrier then pays the medical service provider according to CPS's evaluation.

WSC alleges that CPS's re-pricing practice has systematically reduced payments to medical service providers, such as itself, using flawed and inaccurate computer software and data. WSC argues that CPS wrongfully withheld and/or reduced payment for valid insurance claims while retaining fees and a percentage of the reimbursement. Accordingly, on January 26,

2006, WSC filed a Complaint in the Superior Court of New Jersey, Essex County Court. The Complaint sets forth the following counts: unjust enrichment (Count II), tortious interference with contractual rights and prospective economic advantages (Count III), and violation of the New Jersey Consumer Fraud Act (Count IV).[1] WSC also sought class certification on behalf of similarly situated provider members. On February 28, 2006, CPS removed the instant action to this Court, and on May 9, 2006, CPS filed a motion to dismiss.

*Analysis*

**A.     Federal Question Removal**

A civil action filed in a state court may be removed to federal court if the claim is one "arising under" federal law. 28 U.S.C. §§ 1331, 1441(a). Under the "well-pleaded complaint" rule, the plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). To support removal, "[a] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-11 (1983) (citing *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936)). Federal preemption is ordinarily a defense to a plaintiff's suit and, as such, does not appear on the face of a well-pleaded complaint. *Anderson*, 539 U.S. at 6; *Franchise Tax Bd.*, 463 U.S. at 12.

A party seeking to remove bears the burden of proving that it has met the requirements

---

[1] Counts I and V of the Complaint do not state a specific claim and relate to different factual allegations.

for removal. *Group Hospitalization & Med. Servs. v. Merck-Medco Managed Care, LLP*, 295 F. Supp. 2d 457, 461-62 (D.N.J. 2003). Removal statutes are strictly construed against removal, and all doubts should be resolved in favor of remand. *Entrekin v. Fisher Scientific Inc.*, 146 F. Supp. 2d 594, 604 (D.N.J. 2001).

The Complaint in this matter asserts causes of action against CPS for unjust enrichment, tortious interference with contractual rights and prospective economic advantages, and violation of the New Jersey Consumer Fraud Act. However, the Complaint does not, on its face, present a federal question. CPS asserts that a federal question arises in the context of ERISA and therefore removal of the instant matter to this Court is proper. Specifically, CPS contends that WSC's claims against CPS are "completely preempted" under ERISA's civil enforcement mechanism, § 502(a)(1)(B). On the other hand, WSC asserts that removal of its Complaint is improper because the causes of action WSC asserts against CPS do not fall within the narrow scope of ERISA's civil enforcement provision.

ERISA governs the employee welfare benefit plans under which CPS re-prices claims. *See* 29 U.S.C. § 1002(1). However, before the Court can make a determination on CPS's motion to dismiss, the Court must first determine whether it has subject matter jurisdiction over this case. The Court has subject matter jurisdiction over this case if the requirements for complete preemption under ERISA are satisfied.

**B.     Complete Preemption Under ERISA**

The Supreme Court provided guidance on the scope of complete preemption under ERISA § 502(a)(1)(B) in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* at 208.

Therefore, "ERISA includes expansive preemption provisions . . . which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Id.* (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). As part of ERISA's "comprehensive legislative scheme," § 502(a) serves as an "integrated enforcement mechanism" for ERISA remedies. *Id.* Section 502(a) allows "a participant or beneficiary" to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. "Thus, the ERISA civil enforcement mechanism is [a] provision with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Accordingly, "causes of actions that fall within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id.* (quoting *Metropolitan Life*, 481 U.S. at 66)). "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where no other independent legal duty is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 210.

Based on *Davila*, the Third Circuit in *Pascack Valley Hosp., Inc., v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) established a two-prong test for determining whether state law claims brought by plaintiffs, such as WSC, are completely

preempted by ERISA. Under the *Pascack Valley* test, a state claim may be removed to federal court "only if (1) the Hospital could have brought its breach of contract claim under § 502(a), and (2) no other legal duty supports the Hospital's claim." *Id.*

In *Pascack Valley*, the Third Circuit left open the question of whether a "[h]ospital can obtain standing under § 502(a) by virtue of an assignment of a claim from a participant or beneficiary." 388 F.3d at 400. Because the defendant in *Pascack Valley* failed to demonstrate that the hospital obtained an assignment, the Third Circuit did not have to reach a decision on the standing-by-assignment claims as the issue was not squarely before the Court. *Id.* at 402, 401 n.7. Since *Pascack Valley*, courts in this District have avoided addressing the standing-by-assignment issue by finding that no valid assignment existed or that a contract independent of ERISA between the provider and plan supported the hospital's claim. *See Newark Beth Israel v. N. N.J. Teamsters Benefit Plan*, Nos. 03-2922, 05-5309, 05-5737, 05-5742, 2006 WL 2830973, at *6 (D.N.J. Nov. 20, 2006) ("The Hospital's right to recovery . . . depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself."); *see also Englewood Hosp. & Med. Ctr. v. Aftra Health Fund*, No. 06-6037, 2006 WL 3675261 (D.N.J. Dec. 12, 2006) (Ackerman, J.) ("[T]his Court need not decide whether the Hospital could have brought its breach of contract claim under § 502(a) because the Hospital's claims are predicated on a separate legal duty independent of ERISA."); *Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, No. 06-3266, 2007 WL 1101443 (D.N.J. Apr. 11, 2007) (Ackerman, J.) (same).

Resolution of this matter, however, requires the Court to address the standing-by-assignment issue because WSC is an out-of-network hospital that: 1) "does not have any health

insurance payor setting forth the terms under which the payor will make payment for services that [WSC] provides to patients whom that payor insures;" and 2) "[a]s part of its routine dealings with each patient, [WSC] receives from each patient an assignment of benefits, through which the patient assigns to [WSC] (among other rights) the patient's right to receive payment directly from the patient's insurer for the services that the patient receives at [WSC]." (Pl. Opp'n Br. at 2-3.)  Accordingly, the Court must consider whether WSC has derivative standing to sue under ERISA.

Since *Pascack Valley*, district courts in this Circuit have recognized the validity of assignments of benefits from patients to a hospital.  *See Newark Beth Israel*, 2006 WL 2830973, at *5.  ("[T]he Hospital has met its burden of establishing the existence of a valid assignment."); *see also Englewood Hosp.*, 2006 WL 3675261, at *3.  Here, neither of the parties dispute the existence of valid assignments between WSC and its patients, and that WSC is entitled to receive direct reimbursements from patients' insurers.  Rather, the dispute pertains to the decreased reimbursement amounts WSC has received, allegedly due to CPS's pricing scheme.

This Court concludes that WSC has standing as an assignee to bring a claim against CPS under Section 502(a) of ERISA.  The Court finds persuasive the arguments articulated by the Fifth Circuit in support of allowing standing-by-assignment under ERISA in *Tango Transport v. Healthcare Financial Services*, 322 F.3d 888 (5th Cir. 2003).  Although Congress included an anti-assignment provision pertaining to *pension* plans under ERISA, Congress has not included an anti-assignment provision for health care benefits.  *Id.* at 891.  According to the Supreme Court, the silence of Congress on a matter such as this must mean that health care benefits are assignable.  *See Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837-38

(1988). ("Once Congress was sufficiently aware of the prospect that ERISA plan benefits could be attached and/or garnished - as evidenced by its adoption of § 206(d)(1) - 'Congress' decision to remain silent concerning the attachment or garnishment of ERISA welfare plan benefits 'acknowledged and accepted the practice, rather than prohibiting it.'") (quoting *Alessi*, 451 U.S. at 516)). Moreover, numerous circuit courts to have considered the standing-by-assignment issue have "held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan."[2] *Pascack Valley Hosp.*, 388 F.3d at 401 n.7 (referring to cases collected in *Tango Transp.*, 322 F.3d at 891); *see also Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 614-15 (7th Cir. 2002); *Sys. Council EM-3 v. AT&T Corp.*, 159 F.3d 1376, 1383 (D.C. Cir. 1998); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 226 (1st Cir. 1998); *St. Francis Reg'l Med. Ctr. v. Blue Cross and Blue Shield of Kan.*, 49 F.3d 1460, 1464-65 (10th Cir. 1995).

The Fifth Circuit has articulated additional policy reasons in support of finding that healthcare providers have standing to sue under ERISA as valid assignees. In *Tango Transport*, the court held that it was "nonsensical for an original health care provider assignee to receive both welfare benefits and the right to enforce them via derivative standing, but a subsequent assignee can receive only the benefits, but not the right to enforce them." *Tango Transport*, 322 F.3d at 893. Here, this Court similarly finds that it is illogical to recognize that WSC as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right. This Court also agrees with the Fifth Circuit that "granting derivative

---

[2] Indeed, the Court is not aware of any court of appeals decision holding that health care benefits are not assignable.

standing to the assignees of health care providers helps plan participants and beneficiaries by encouraging providers to accept participants who are unable to pay up front."  *Id*. at 894.

Moreover, the Court finds no convincing argument to support the suggestion that WSC should not have standing to bring suit under ERISA as a valid assignee.  The only case in which the Third Circuit expressed doubts with regard to the standing-by-assignment issue was decided in 1985, three years prior to the Supreme Court's ruling in *Mackey*.  *See Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund*, 764 F.2d 147, 154 n.6 (3d Cir. 1985) ("[E]ven if [the plaintiff] had actually assigned her claim to the IGLWU Fund, we have serious doubts whether she could assign along with her substantive rights her right to sue in federal court.").  In *Pascack Valley*, the Third Circuit noted that "[d]istrict courts in this Circuit have disagreed over the scope of *ILGWU*," but ultimately declined to express an opinion on derivative standing under Section 502(a) of ERISA because the issue was not squarely before it.  388 F.3d at 401 n.7.

However, courts in this Circuit have found that the proposition set forth in *ILGWU* is not binding authority.  *See Winter Garden Med. Ctr. v. Montrose Foods Prods. of Pa., Inc.*, No. 91-2327, 1991 WL 124577, at *3 n.2. (E.D. Pa. July 3, 1991) ("As the court casually mentioned this proposition in a footnote without any discussion, it is mere dicta which does not require this court to adopt a different result."); *see also Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co.*, No. 92-1520, 1992 WL 236257 at *5 (E.D. Pa. Sept. 3, 1992); *Albert Einstein Med. Ctr. v. Nat'l Benefit Fund*, 740 F. Supp. 343, 350 (E.D. Pa. 1989).  Moreover, at least one court in a post-*Pascack Valley* decision concluded that patients may assign their benefits to health care providers.  *See In re LymeCare, Inc.*, 301 B.R. 662, 682 (Bankr. D.N.J. 2003) (agreeing with

other circuits that medical care providers that receive an assignment of benefits from its patients have standing to sue under ERISA). For the foregoing reasons, the Court finds that WSC has standing to sue under § 502(a) of ERISA as a valid assignee, thereby satisfying the first prong of the *Pascack Valley* test.

The Court also finds that the second prong of the *Pascack Valley* test is satisfied here. WSC's state claims against CPS do not arise from the terms of an independent contract but rather from a dispute over the amount of reimbursement to which WSC is entitled as an assignee of its patients' welfare benefit plan benefits as governed by ERISA. As noted above, WSC provides out-of-network services to CPS subscribers on a non-contractual basis. In *Pryzbowksi v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d Cir. 2001), the Third Circuit held that "cases challenging the quality of the medical treatment performed" are not completely preempted under section 502(a) of ERISA but "cases where the claim challenges the administration of, or eligibility for, benefits" are completely preempted. Subsequently, in *Levine v. United Healthcare Corp.*, 402 F.3d 156 (3d Cir. 2005), the Third Circuit held that reimbursement claims of previously-paid health benefits qualify as claims for "benefits due" and are therefore completely preempted under ERISA.

Applying these Third Circuit decisions to the case at bar, this Court concludes that WSC's claims against CPS of unjust enrichment, tortious interference, and violation of the New Jersey Consumer Fraud Act essentially serve to retrieve "benefits due" and pertain to challenges to the "administration" of benefits rather than "the quality of the medical treatment performed." *Pryzbowski*, 245 F.3d at 273. Because no extrinsic contract governs the amount of reimbursement to which WSC is entitled, WSC's claims are "inextricably intertwined" with the

terms of the ERISA welfare benefit plans.  *Compare Ala. Dental Assoc. v. Blue Cross & Blue Shield of Ala., Inc.*, No. 205-1230, 2007 WL 25488, at *5 (M.D. Ala. Jan. 3, 2007) (holding claims by out-of-network dentists who received assignment of benefits from their patients were completely preempted by ERISA because the dentists' allegations against the defendant were not based on any duty independent of their patients' Benefit Agreements), *with Barnert Hosp.*, 2007 WL 1101443, at *11 ("The Plaintiffs, in this matter, are neither 'participants' or 'beneficiaries' as defined under ERISA and their claims are predicated on a separate legal duty independent of ERISA.  Nor are the Plaintiffs claims for breach of contract, unjust enrichment and quantum meruit 'inextricably intertwined' with the terms of the ERISA plan.").  Accordingly, the Court finds that WSC's claims are not predicated on a legal duty independent of ERISA, and the second prong of the *Pascack Valley* test is therefore satisfied.

WSC contends that the Third Circuit has not held that "only a separate contract can satisfy the second prong's definition of an 'independent legal duty' under the *Pascack Valley* test." (Pl. Suppl. Opp'n Br. at 6).  WSC also asserts that "its state law causes of action are premised on legal duties that [CPS], as an outsider to the relationship between [WSC] and the insurers, owes to [WSC] wholly independent of ERISA." (*Id*. at 4.)  In support of this proposition, WSC specifically points to tortious interference as a cause of action premised on legal duties independent of ERISA.  Even if *Pascack Valley* can be read in this way, the Court nevertheless finds that WSC's claims of unjust enrichment, tortious interference, and violation of New Jersey Fraud Act cannot be resolved without reference to the benefit plans governed by ERISA.

Various district courts faced with ERISA complete preemption cases, both within and

-11-

outside of this Circuit, have reached similar results. *See Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.*, No. 05-4389, 2006 WL 1663752, at *8 (S.D. Tex. June 13, 2006) (distinguishing *Pascack Valley* and concluding that "AITS is challenging Aetna's determination that certain charges were in excess of '*reasonable and customary' fees charged*, or were duplicative of charges that had already been paid. Resolving this dispute requires a determination of N.D.'s rights and *benefits due* under the Kroger ERISA Plan") (emphasis added); *see also Smith v. Logan*, 363 F. Supp. 2d 804, 812 (E.D. Va. 2004) (holding that former employee's tortious interference claim brought in state court could not be resolved without reference to ERISA-regulated plan, and, thus, claim was completely preempted by ERISA); *Termini v. Life Ins. Co. of N. Am.*, 464 F. Supp. 2d 508, 516 (E.D. Va. 2006) (applying the tortious interference analysis in *Smith*, and holding that "plaintiff's claims [were] not governed by a legal duty independent of the ERISA plan"); *Thomas v. Aetna Inc.*, No. 98-2552, 1999 WL 1425366, at *9 (D.N.J. June 8, 1999) ("Because the terms of the Plan are critical to the resolution of the fraudulent inducement claim, the plaintiff's cause of action is sufficiently 'related to' an ERISA plan to fall within the purview of ERISA's preemption clause.").

For the foregoing reasons, the Court finds that this matter does not involve any legal duties independent of the ERISA-governed plans to which WSC received an assignment of benefits. The second prong of the *Pascack Valley* test is satisfied here, and WSC's state claims are therefore completely preempted by ERISA. Accordingly, the Court has subject matter jurisdiction over this case, and CPS's motion to dismiss is properly before the Court.[3]

---

[3] The Court notes that there is a question as to whether CPS qualifies as a proper defendant under ERISA. As a court in this District noted in *Briglia v. Horizon Healthcare Services*, No. 03-6033, 2005 WL 1140687, at *5 (D.N.J. May 13, 2005), "the Third Circuit has

**C.      Express Preemption Under ERISA**

Although CPS does not allege that WSC's state law claims are expressly preempted by Section 514(a) of ERISA, the Court finds it appropriate to consider this issue separately. Express preemption under Section 514(a) of ERISA -- as opposed to complete preemption under § 502(a) -- provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may not or here after *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). In *Pilot Life Insurance Company v. Dedeaux*, the Supreme Court gave § 514(a) a broad reading, stating: "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." 481 U.S. 41, 47 (1987) (quoting *Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 739 (1985)) (internal quotation marks omitted).

Recently, the Third Circuit upheld a district court's finding of express preemption under Section 514(a) for a professional malpractice claim against a non-fiduciary plan administrator. *Kollman v. Hewitt Assocs.*, Nos. 05-5018, 05-5207, 06-1558, 2007 WL 1394503 (3d Cir. May

---

not determined whether a plaintiff may bring suit against a third party plan administrator under section 502(a)(1)(B)." However, in *Curcio v. John Hancock Mutual Life Insurance Company,* 33 F.3d 226, 233 (3d Cir. 1994), the Third Circuit "considered whether a plaintiff could bring suit under section 502(a)(3)(B)'s equitable relief provision against a party other than the plan, and concluded that the plaintiff could proceed against a plan administrator who is also a fiduciary." *Briglia*, No. 03-6033, 2005 WL 1140687, at *5 (citing *Curcio*, 33 F. 3d at 233)). District courts, such as the court in *Briglia*, have interpreted *Curcio* to mean that a "[p]laintiff may bring a 502(a)(1)(B) claim against a third-party plan administrator of a self-funded plan, but only if the third-party administrator is a fiduciary." *Id*. Resolution of the instant matter before the Court, however, focuses on the narrow question of whether WSC's state claims against CPS are completely preempted under ERISA. Therefore, for the purposes of this motion to dismiss, the Court need not address whether a fiduciary can be sued under Section 502(a)(1)(B) or whether CPS qualifies as a proper defendant under ERISA.

14, 2007). The plaintiff in *Kollman* sued the defendant, a third-party service provider, for providing an inaccurate benefits calculation, including the amount of the plaintiff's lump sum pension. *Id*. at *1-2. The Third Circuit agreed with the district court that the plaintiff's claims were preempted by ERISA because the plaintiff's claim went "to the essence of the function of an ERISA plan – the calculation and payment of the benefit due to a plan participant." *Id*. at *10. As the Third Circuit explained, "[a]llowing beneficiaries to assert state law claims against non-fiduciary plan administrators . . . would upset the uniform regulation of plan benefits intended by Congress." *Id*. (quoting *Howard v. Parisian, Inc.*, 807 F2d 1560, 1565 (11th Cir. 1987)).

Applying the principles set forth in *Pilot* and *Kollman*, the Court finds that WSC's claims against CPS are expressly preempted by Section 514(a) of ERISA. WSC's causes of action "relate to" an ERISA-governed benefit plan because they all stem from an alleged underpayment of benefits. Like the plaintiff in *Kollman*, WSC essentially disputes "the calculation and payment of [a] benefit due" to WSC based on the assignment of benefits WSC received from its patients. *Id*. at *10. Therefore, any adjudication of WSC's state law claims of unjust enrichment, tortious interference, and violation of New Jersey Consumer Fraud Act requires the Court to consider in detail the plans to which WSC received an assignment of benefits "in order to properly address [WSC's] arguments outside the mechanism prescribed by ERISA." *Id*. Such an outcome contravenes congressional intent with respect to "developing a nationwide scheme for ERISA plans." *Id*. Accordingly, express preemption under Section 514(a) of ERISA also applies in this matter.

The finding of preemption under Section 514(a), however, does not serve as an independent basis for subject matter jurisdiction. *See Dukes v. U.S. Healthcare*, 57 F.3d 350,

355 (3d Cir. 1995) ("When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved."). Thus, this court's finding of express preemption under Section 514(a) is not dispositive.

Nevertheless, the Court's conclusion that WSC's claims are expressly preempted by Section 514(a) buttresses the Court's finding of complete preemption under Section 502(a). As stated above, the Court finds that WSC's claims are expressly preempted by § 514(a) because they "relate to" an ERISA-governed benefit plan. The Court also finds that WSC's claims are completely preempted by § 502(a) because they essentially serve to retrieve "benefits due" under the ERISA plans to which WSC received an assignment of benefits. In short, resolution of this matter requires an evaluation of benefit plans governed by ERISA. Therefore, WSC's claims are both completely and expressly preempted by ERISA.

**D.     ERISA's Savings Clause**

WSC contends that ERISA's savings clause allow it to pursue its state law claims. The savings clause, section 514(b)(2)(A), provides: "nothing in [ERISA's preemption provisions] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[4]  WSC alleges CPS violated

---

[4] ERISA's savings clause saves from preemption certain self-funded ERISA plans set forth in the "deemer" clause, "which prevents state laws purporting to regulate insurance from deeming an employee benefit plan an insurance company." *Sparks v. Duckrey Enters.*, No. 05-2178, 2007 WL 320260, at *4 (E.D. Pa. Jan. 30, 2007) (citing *Pilot Life*, 481 U.S. at 45; 29 U.S.C. § 1154(b)(2)(B) (2006)). No "deemer" clause issue appears to apply here because the record does not indicate that any of the ERISA-governed plans to which WSC received an assignment of benefits were self-funded.

N.J.A.C. § 11:21-7.13, "a New Jersey state regulation of the conduct of the insurance industry." (Pl. Opp'n Br. at 20).  This administrative regulation was established pursuant to N.J.S.A. § 17B:27A-17 *et seq.*, the Small Employer Health Benefits Program.  The relevant portion of N.J.A.C. provides the following:

> (a) In paying benefits for covered services under the terms of the small employer health benefits plans provided by health care providers not subject to capitated or negotiated fee arrangements, *small employer carriers* shall pay covered charges for medical services, on a reasonable and customary basis or actual charges, and, for hospital services, based on actual charges.  Reasonable and customary means a standard based on the Prevailing Healthcare Charges System profile for New Jersey or other state when services or supplies are provided in such state, incorporated herein by reference published and available from the Ingenix, Inc. 12125 Technology Drive, Eden Prairie, Minnesota 55344.

N.J.A.C. § 11:21-7.13 (emphasis added).  Although WSC asserts that CPS violated N.J.A.C. § 11:21-7:7.13, WSC does not affirmatively state that CPS qualifies as a "small employer carrier" as required by the regulation.  Moreover, WSC actually describes CPS as "*a national provider* of medical cost containment and healthcare management services, including (among other services) bill repricing services."  (Pl. Opp'n Br. at 4 (emphasis added).)  Based on WSC's characterization of CPS as "a national provider," the Court concludes that WSC itself acknowledges that CPS does not qualify as a "small employer carrier."  CPS cannot, therefore, be said to have violated N.J.A.C. § 11:21-7:7.13 because the statute apparently does not apply to CPS.  Accordingly, the Court finds that WSC's state claims against CPS cannot be saved under Section 514(b)(2)(A).[5]

---

[5] Even if the Court found that WSC had a valid savings clause claim, such a determination would not affect the outcome of this matter because "once ERISA preemption is found for jurisdictional purposes, jurisdiction will not be disturbed by any subsequent

**D.     Motion to Dismiss Standard**

Because this Court holds that it has subject matter jurisdiction, it now considers CPS's motion to dismiss. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), the Court is required to accept as true the facts and allegations contained in the complaint and all reasonable inferences drawn therefrom, and to view the facts in the light most favorable to the non-moving party. *Sadruddin v. City of Newark*, 34 F. Supp. 2d 923, 925 (D.N.J. 1999); *see also Gen. Motors Corp. v. New A Chevrolet, Inc.*, 263 F.3d 296, 325 (3d Cir. 2001). While the Court will accept as true all reasonable inferences and well-pleaded allegations, it will not accept "unsupported conclusions and unwarranted inferences" or legal conclusions cast in the form of factual allegations. *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2002). In the complaint, the claimant must set forth sufficient information to provide defendant with notice of the plaintiff's claims, such as the elements of the claims. *Id*; *see also* Fed. R. Civ. P. 8(a)(2). A "complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff['s] cause of action." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996). The Supreme Court has explained:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47-48 (1957). "The court may dismiss the complaint only if it is

---

determination that state insurance law applies." *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 308 n.4 (3d Cir. 2006).

clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

CPS asserts that the instant action should be dismissed because WSC did not state a valid state law claim, and, even if WSC had done so, its claims are completely preempted by ERISA's civil enforcement provision. As demonstrated herein, the Court finds that WSC's state law claims in its Complaint are completely preempted by ERISA § 502(a) and expressly preempted by § 514 as claims "relating to" an employee benefits program.

District courts have held that when a plaintiff's claims are completely preempted by ERISA as here, granting dismissal with leave to file an amended Complaint asserting an ERISA claim is an appropriate course of action. *See Viechnicki v. Unumprovident Corp.*, No. 06-2460, 2007 WL 433479, at *6 (E.D. Pa. Feb. 8, 2007); *Cecchanecchio v. Cont'l Casualty Co.*, No. 00-4925, 2001 WL 43783, at *5 (E.D. Pa. Jan. 19, 2001); *Delong v. Teacher's Ins. and Annuity Ass'n*, No. 99-1384, 2000 WL 426193, at*5 (E.D. Pa. Mar. 29, 2000). "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Gregory Surgical Servs., LLC. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06-0462, 2006 WL 3751385, at *2 (D.N.J. Dec. 19, 2006) (quoting *Grayson v. Mayview State Hosp.*, 283 F.3d 103, 108 (3d Cir. 2002)).

Because the state law claims in WSC's Complaint are preempted by ERISA, the Court will grant CPS's motion to dismiss. The Court will grant WSC leave to file an amended Complaint to assert an ERISA claim or claims if feasible.

*Conclusion and Order*

For the foregoing reasons, it is hereby ORDERED that Defendant's motion to dismiss (Docket No. 8) is GRANTED. Plaintiff's Complaint is DISMISSED as being preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq*.

Should Plaintiff desire to file an amended complaint alleging that Defendant has violated ERISA, said amended complaint must be filed within forty five (45) days of the issuance of this Order. If Plaintiff fails to file a timely amended complaint, the Court will direct the Clerk of Court to close this case without further notice.

Newark, New Jersey
Dated: August 20, 2007                                   /s/ Harold A. Ackerman
                                                         U.S.D.J.